UNITED STATES of America,
Plaintiff,

v.

GENOA COOPERATIVE CREAMERY
COMPANY, Defendant.

No. 71–CR–54.

United States District Court,
W. D. Wisconsin.

Jan. 6, 1972.

John O. Olson, U. S. Atty., Madison, Wis., for plaintiff.

Ernest O. Hanson, La Crosse, Wis., for defendant.

JUDGMENT AND OPINION

JAMES E. DOYLE, District Judge.

The defendant is charged with discharging on November 19, 1970, refuse matter, consisting of milk wastes, from its creamery in Genoa, Wisconsin, into the Mississippi River, a navigable water of the United States, in violation of 33

U.S.C. § 407.[1] The case has been tried to this court. The evidence consisted of a factual stipulation and testimony by an expert witness called by the defendant. The United States objected to portions of the stipulation, and portions of the expert's testimony. Those objections are hereby overruled.

The defendant has stipulated, and I hereby find as fact, that on November 19, 1970, it discharged liquid containing milk wastes and wash water with suspended solids from the rinsing of the floor, vats, and utensils of its creamery, into three underground tanks adjacent to the building and then through underground pipes to the bottom of a hill where it emerged into an open ditch and flowed under a highway into the Mississippi River, a navigable waterway of the United States. Defendant does not claim to have been issued a permit authorizing its discharge and I find as fact that no such permit was issued.

█ The defendant's discharge is "refuse matter" within the proscription of section 407. It contains waste matter including suspended solids. "The words of the Act are broad and inclusive: 'any refuse matter of any kind or description whatever.' Only one exception is stated. . . . More comprehensive language would be difficult to select. The word 'refuse' does not stand alone; the 'refuse' banned is 'of any kind or description whatever,' apart from the one exception. . . ." United States v. Standard Oil Co., 384 U.S. 224, 229, 86 S.Ct. 1427, 1430, 16 L.Ed.2d 492 (1966).

█ The defendant claims that the refuse matter it discharged is within the exception to the proscription: "other than that flowing from streets and sewers and passing therefrom in a liquid state, into any navigable water. . . ." It alleges that its underground tanks and pipes constitute a sewer from which its refuse flows in a liquid state, although containing suspended solids. Therefore, defendant reasons, its refuse discharge is exempted from penalty.

Defendant's contention raises four questions of construction of section 407: (1) Does "that [refuse matter] flowing from . . . sewers and passing therefrom in a liquid state" mean any and all such refuse matter passing from sewers? (2) What is a "sewer"? (3) What is a "liquid state"? (4) Does "therefrom" mean that the refuse must pass directly from the sewer into the navigable waters? The answer to the first is determinative of this case.

The leading case on the scope of the exception is United States v. Republic Steel Corp., 362 U.S. 482, 80 S.Ct. 884, 4 L.Ed.2d 903 (1960). The factual situation in the case as summarized by the Supreme Court, *supra*, at 483–484, 80 S.Ct. 884, 4 L.Ed.2d 903, and as found by the District Court, 155 F.Supp. 442 (N.D.Ill.1957), was as follows: The respondents operated mills on the banks of a navigable river for the production of iron and related products, using large quantities of the water from the rivers, "returning it through numerous sewers." The processes used by the respondents created industrial waste containing various solids. Many fine particles of these solids in the water were discharged into the river. Thus, the case

---

1. § 407. *Deposit of refuse in navigable waters generally*

It shall not be lawful to throw, discharge, or deposit, or cause, suffer, or procure to be thrown, discharged, or deposited either from or out of any ship, barge, or other floating craft of any kind, or from the shore, wharf, manufacturing establishment, or mill of any kind, any refuse matter of any kind or description whatever other than that flowing from streets and sewers and passing therefrom in a liquid state, into any navigable water of the United States, or into any tributary of any navigable water from which the same shall float or be washed into such navigable water; . . . provided . . . That the Secretary of the Army, whenever in the judgment of the Chief of Engineers anchorage and navigation will not be injured thereby, may permit the deposit of any material above mentioned in navigable waters. . . .

involved refuse matter flowing from sewers in a liquid state [2] into navigable water. The court found it necessary to decide whether the statutory exemption applied to all refuse matter or only to some refuse matter. The court held that the refuse matter flowing from the respondents' sewers in a liquid state was not within the statutory exception. ". . . § 13 [present section 407] bans the discharge in any navigable water of 'any refuse matter of any kind or description whatever other than that flowing from streets and sewers and passing therefrom in a liquid state.' The materials carried here are 'industrial solids,' . . . . The particles . . . were in suspension, not in solution. Articles in suspension, such as organic matter in sewage, may undergo chemical change. Others settle out. All matter in suspension is not saved by the exception clause in § 13. Refuse flowing from 'sewers' in a 'liquid state' means to us 'sewage'. . . . The fact that discharges from streets and sewers may contain some articles in suspension that settle out and potentially impair navigability is no reason for us to enlarge the group to include these industrial discharges. We follow the line Congress has drawn and cannot accept the invitation to broaden the exception in § 13 because other matters 'in a liquid state' might logically have been treated as favorably as sewage is treated. We read the 1899 Act charitably in light of the purpose to be served." *Supra,* pp. 489–91, 80 S.Ct. p. 889, 4 L.Ed. 2d 903.

It is clear from this language that not all refuse matter flowing from sewers in a liquid state is exempted. Only that refuse matter which is "sewage" is exempted.

Thus our inquiry turns from the words of the statutory exemption to the words of the Supreme Court in construing the exemption. That is, the statutory exemption is now to be read as covering only "sewage flowing from streets and sewers and passing therefrom in a liquid state." If the refuse matter in the present case was not "sewage," as the term was used by the court in *Republic Steel,* then it was not within the exemption. The court made clear that the term "sewage" excluded the "industrial discharges" involved in that case: "The fact that discharges from streets and sewers may contain some articles in suspension that settle out and potentially impair navigability is no reason for us to enlarge the group to include these industrial discharges." 490–491, 80 S.Ct. 889–890, 4 L.Ed.2d 903. I think it unnecessary to compare the physical ingredients of the "industrial discharge" involved in *Republic Steel* with the physical ingredients of the "industrial discharge" involved in the present case. I think this unnecessary because the fairest and most reasonable interpretation of the Supreme Court's opinion in *Republic Steel* is that it excluded all industrial wastes from the statutory exemption and that it construed the statutory exemption to cover only human and animal and domestic wastes, as distinguished from industrial wastes. This interpretation of the *Republic Steel* opinion is fortified by footnote 6 in the sentence just quoted from 362 U.S. page 491, 80 S.Ct. page 889, 4 L.Ed.2d 903. The footnote is to this language in the text of the opinion: "The fact that discharges from streets and sewers may contain some articles in suspension that settle out and potentially impair navigability. . . ." The

2. The District Court had found that the solid particles of industrial waste suspended in the water flowing from the sewers were not "in a liquid state." 155 F.Supp. 442, 444, 452. Accepting the ultimate findings of the District Court concerning the nature of these particles,

the Court of Appeals nevertheless concluded that they were "in a liquid state," within the meaning of the exemption in § 407. 264 F.2d 289, 300 (C.A. 7th, 1959). The Supreme Court appears to have acquiesced in the view that they were "in a liquid state."

footnote consists of the following quotation from H.R.Doc.No. 417, 69th Cong., 1st Sess., p. 9:

> "In some instances the organic solid matter in sewage and wastes causes temporary shoaling in the vicinity of the point of discharge, but in most cases of this kind nature eventually decomposes this organic matter and rectifies the condition. In a few instances, where large quantities of sewage are discharged into sluggish and restricted waters, overpollution results and the oxygen content remains insufficient to enable nature to break up the solids. In such cases permanent shoaling in the vicinity of the point of discharge results and dredging must be resorted to. As a rule such dredging is well attended to by municipal authorities."

The inferences to be drawn from the House document and from its citation by the court in this context are surely far from clear. However, from the language of the House document, especially the use of the word "sewage" and the reference to dredging by "municipal authorities" (as distinguished from private industries), it seems fair to infer that the exemption in § 407 is being discussed in terms of organic solid matter present in municipal sewage, that is, typically, human and animal and domestic wastes, as distinguished from industrial wastes. From the citation of this discussion by the court in the indicated context of its opinion, it seems fair to infer that the court was underscoring its endorsement of this construction of the exemption in § 407.

This construction of the exemption contained in § 407 has been adopted recently by the District Court for the Western District of Pennsylvania in United States of America v. Pennsylvania Industrial Chemical Corporation, 329 F.Supp. 1118:

> "The Courts' charge to the jury defined 'refuse matter' as encompassing, in any amount, all foreign substances and pollutants, except those flowing from streets and sewers in a liquid state, including industrial waste. This composite definition . . . was taken directly from the decisions of the Supreme Court in United States v. Standard Oil Co., 384 U.S. 224, 86 S.Ct. 1427, 16 L.Ed.2d 492 (1966) and United States v. Republic Steel Corp., 362 U.S. 482, 80 S.Ct. 884, 4 L.Ed.2d 903 (1960). The excepted refuse matter, i. e., that flowing from streets and sewers and passing therefrom in a liquid state was defined to the jury as meaning, 'sewage', which again, was taken directly from *Republic Steel.* . . . 'Sewage' was defined to the jury as, generally, that water, filth, and feculent matter deriving usually from human and domestic waste, but not including industrial waste."

I concur in this definition of sewage. Therefore, even assuming that Genoa's discharge system is a sewer discharging matter in a liquid state therefrom, the refuse matter it discharged on November 19, 1970, was not within the exemption defined in section 407 because it is not "sewage."

■ Defendant also alleges that its discharge is not in violation of section 407 because it does not impede the navigability of the Mississippi River. Assuming that there is no impediment to navigation, defendant's allegation is without merit. It is well settled that it is not necessary that navigation be impaired. *La Merced,* 84 F.2d 444 (9th Cir. 1936); United States v. Ballard Oil Co. of Hartford, 195 F.2d 369 (2nd Cir. 1952).

■ Defendant's final allegation, not formally and specifically raised in the course of this case, is that section 407 is unconstitutionally vague. Defendant does not develop this argument. I find it without merit. The prohibition in the statute is broad; it is not vague.

Accordingly, I find that on November 19, 1970, defendant violated the prohibition in 33 U.S.C. § 407, and the defendant is adjudged guilty as charged.